**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEITH L CRAIN, and         :
KAREN J. CRAIN,            :      CIVIL ACTION NO. **3:12-CV-2343**
                            :
        Plaintiffs        :
                            :
      v.               :      (Magistrate Judge Blewitt)
                            :
CHESAPEAKE APPALACHIA,    :
L.L.C., *et al.*,             :
                            :
        Defendants     :

## MEMORANDUM AND ORDER

### I.     Procedural Background.

On November 23, 2012, Plaintiffs, Keith L. Crain and Karen J. Crain, husband and wife, filed the instant counseled Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and for money damages under Pennsylvania law. (Doc. 1). Plaintiffs reside in Rome, Pennsylvania. Plaintiffs name as Defendants Chesapeake Appalachia, L.L.C., Chesapeake Operating, Inc., and Chesapeake Energy Corporation (collectively referred to as "Defendants"). Plaintiffs aver that the three Defendants are Oklahoma corporations. Plaintiffs state that this Court has diversity jurisdiction over their Complaint pursuant to 28 U.S.C. §1332(a). Plaintiffs allege that Defendants "are interrelated business entities engage collectively in the business of exploration, development and production of oil and natural gas reserves from fields throughout the United States, including the Marcellus Shale fields of the northeastern United States." (Doc. 1, ¶ 5).

On February 1, 2013, Defendant Chesapeake Appalachia, L.L.C., filed a Partial Motion to Dismiss Counts III through VI of Plaintiffs' Complaint as against it pursuant to Fed. R. Civ.P. 12(b)(6). **(Doc. 7).** Defendant Chesapeake Appalachia, L.L.C., also filed its support brief on February 1, 2013. (Doc. 8). Also, on February 1, 2013, Defendant Chesapeake Appalachia, L.L.C., filed its Partial Answer to the remaining Counts of Plaintiffs' Complaint with Affirmative Defenses.[1] (Doc. 9). Further, on February 1, 2013, Defendants Chesapeake Energy Corporation and Chesapeake Operating, Inc., jointly filed a separate Motion to Dismiss Plaintiffs' Complaint in its entirety as against them under Rule 12(b)(6) **(Doc. 10)**, with two attached Exhibits (Docs. 10-2 & 10-3). Defendants Chesapeake Energy Corporation and Chesapeake Operating, Inc., filed their support brief to their Motion to Dismiss on February 1, 2013. (Doc. 11).

After being granted extensions of time, on February 27 and 28, 2013, Plaintiffs filed their Responses and Briefs in Opposition to the Defendants' Motions to Dismiss with Attachments. (Docs. 17, 17-1, 18, 19 & 19-1). On March 12, 2013, all Defendants filed their Reply Briefs in support of their respective Motions to Dismiss. (Docs. 20 & 21). As such, the Defendants' Motions **(Docs. 7 & 10)** are now ripe for review.

On March 15, 2013, in a Joint Case Management Plan, the parties consented to proceed before the undersigned for all matters, and then on March 20, 2013, District Court

---

[1]We take note that Defendant Chesapeake Appalachia, L.L.C., filed one Partial Motion to Dismiss (Doc. 7), and Defendants Chesapeake Energy Corporation and Chesapeake Operating, Inc., jointly filed a separate Motion to Dismiss the Complaint in its entirety as against them. (Doc. 10).

ordered that this case be assigned to the undersigned for all matters. (Docs. 22 &23).

On July 19, 2013, we entered an Order and stayed all discovery in this case until Defendants' pending Motions to Dismiss were decided by the Court. (Doc. 25).

## II.    Factual Background.

The relevant factual background information of the case is discussed below. Plaintiffs, husband and wife, own two tracts of land amounting to 217 total acres, located in Bradford County, Pennsylvania. (Doc. 1, p. 2). On or around September 12, 2006, Plaintiffs entered into a "Paid Up Gas and Oil Lease," with supporting "Addendum" with East Resources, Inc., "for oil, gas and constituents, together with related rights, underlying real property owned by plaintiff in the Township of Rome, Bradford County, Pennsylvania." (Id.) The 2006 Lease and 2006 Addendum specified the following terms. The Lessee was granted exclusive rights to oil and gas on the leased lands, during a primary term of five (5) years beginning on September 12, 2006. (Id.). The Lease also provided, however, that the primary five year term could be extended so long as one of the following conditions were met: (1) oil or gas were being "produced in paying quantities" from the leased land; (2) the "lease [was] otherwise maintained;" (3) an additional year for continuing operations after a dry hole was drilled or "if production thereof should cease from any cause," or (4) *force majeure* hiatus. (Id. at p. 3). Regarding the third (3) provision, the one year extension was to be secured by payment of so-called "shut-in royalties," when any wells on the land had been out of production for 12 months. (Id.). Furthermore, the 2006 Lease and 2006 Addendum specified that the leased land could be pooled/unitized to create a larger drilling

unit, so long as the Lessor was given notice with an identification and description of the portion of leased land to be pooled/unitized.  (Id.).  This "pooling provision" also stipulated that, for the purposes of the Lease, other than royalty calculation, any production or drilling on the pooled unit would constitute production or drilling on the leased land.  (Id.).  The Addendum to the 2006 Lease provided that, "Lessee agrees that this lease can only be extended by provisions laid out in this addendum."  (Id.).  The Lease secured the terms through an up-front payment of $65 per acre, along with continuing annual payments for each year the Lessor delayed drilling operations within that term, yet the language of the Addendum provides that all rentals due were deemed paid upon execution of the Lease. (Id. at p. 4).

By May 17, 2008, Lessor (East Resources, Inc.) had not commenced with any drilling operations on the Plaintiffs' land.  (Id.)  As a result, on May 17, 2008, Plaintiffs entered into a second Lease Agreement and Addendum with East Resources, Inc., at the alleged prompting of an agent of the business.  (Id.).  The terms of the 2008 Lease provided that Plaintffs-Leasees were to receive $300 per acre within 90 days of execution of the Lease, and an additional $1700 per acre within 90 days of commencement of the term of the Lease, designated as September 11, 2011.  (Id.).  Despite that provision, however, the 2008 Addendum again read that all rentals due were deemed paid at that time.  (Id.).

1. *Plaintiffs' Alleged Facts*

Plaintiffs allege that the agent of Eastern Resources, misrepresented to them that the company was unlikely to commence any activity, which could potentially trigger the

provisional secondary period of the 2006 Lease, and, therefore, they should receive the full royalties promised in the 2008 Lease and Addendum.  Plaintiffs also allege that the land agent promised that the 2008 Lease would "supersede" the 2006 Lease on the commencement date, and thus, that Plaintiffs would receive the sizable $1700 per acre bonus even if drilling or other development preceded the 2008 Lease's September 11, 2011 effective date.  Subsequently, Plaintiffs did receive the initial promised payment of $300 per acre upon execution of the 2008 Lease.  (Id.).  Plaintiffs aver that no drilling or other development on their lands occurred before the expiration of the 2006 Lease's term on September 11, 2011. Plaintiffs state that more than 90 days have passed since the set commencement date of the 2008 Lease of September 11, 2011, and both parties concede that Plaintiffs have not received the payment of $1700 per acre.

It is further undisputed that on or around September 13, 2011, Defendants Chesapeake Appalachia, L.L.C.[2], filed a "Declaration and Notice of Pooled Unit, Crain Unit," with the Bradford County Recorder of Deeds, in which they detailed pooling 90 acres of the Plaintiffs' leased land into a larger 615-acre unit, known as the "Crain Unit."  (Id. at p. 6).  Plaintiffs allege that this Declaration became effective on July 15, 2011, and was executed on the Defendants' behalf on August 3, 2011.  (Id.).  Plaintiffs state that the "Crain Unit" Declaration was recorded on September 13, 2011, after the 2006 Lease expired.  It is undisputed that Plaintiffs received a letter as to the execution of the Declaration on

---

[2]Plaintiff alleges that the named Defendants assumed the interests and obligations of the original lessee East Resources, Inc., at some point after May 28, 2008 and before September 13, 2011.

December 12, 2011, however, Plaintiffs allege this to be the first notice they received of the so-called "Crain Unit," therefore violating the mandatory notice provision of the 2006 Lease. (Id.).

Further, Plaintiff's allege that the primary term of the 2006 Lease had not been extended, therefore, the 2008 Lease has commenced, and that they are owed the promised $1700 per acre payment by Defendants. (Id.). Plaintiffs, therefore, raise 6 Counts in their Complaint: (1) a Declaratory Judgment finding the 2006 Lease & 2006 Addendum have expired under their terms; (2) a Declaratory Judgment stating that the 2008 Lease & 2008 Addendum were valid and enforceable and remain in effect; (3) a demand for specific performance of the 2008 Lease & 2008 Addendum, including the payment of the $1700 per acre bonus; (4) a state tort claim for fraudulent misrepresentation with respect to the negotiation of the 2008 Lease & 2008 Addendum; (5) a state law Slander of Title claim; and (6) a state law Breach of Covenant of Good Faith and Fair Dealing claim. As relief for the Misrepresentation claim, Plaintiffs seek at least $3000 per acre. For the Slander claim, Plaintiffs request monetary damages at a minimum of $75,000 along with punitive damages also in excess of $75,000. As relief for the bad faith claim, Plaintiffs request damages in excess of $75,000, as well as unspecified punitive damages. (Id. at p. 18).

  2.  *Defendants' Alleged Facts*

Defendants, however, argue that their activities with the Crain Unit served to extend the primary term of the 2006 Lease, as they occurred within original five year term of that Lease. (Doc. 22, p. 4). Further, Defendants contend that the 2008 Lease was intended as a

top lease, and therefore could not have become effective while the term of the 2006 Lease has not expired.  (Id.).  They also contend that effective date of the 2008 Lease was contingent upon the expiry of the 2006 Lease, and thus that there was no fixed date as to when the $1700 per acre should have been disbursed.  Specifically, Defendants state that "because the 2006 Lease and Addendum were continued beyond the primary term, the 2008 Lease and Addendum, which were in the nature of a top lease, never came into existence and were never 'effective' and therefore there was no obligation of further payment under the 2008 Top Lease and 2008 Addendum."  Accordingly, Defendants contend that the 2008 Lease is not valid, because the 2006 Lease still controls, and thus, that they have no  obligation to Plaintiffs  as to the $1700 per acre bonus payment, nor to the other remaining claims asserted by Plaintiffs in their Complaint.  (Id.).

Thus, the parities, in part, dispute "whether the terms of the 2008 Lease and 2008 Addendum explicitly or implicitly conditioned the effectuation of that Lease on the 'effective date' of September 11, 2011, or the agreed-upon payment of $1,700 per acre within 90 days of that date, on Defendants' failure to engage in term-extending conduct under the 2006 Lease and 2006 Addendum."     (Doc. 22, p. 4).

### III.    Motion to Dismiss Standard.

In  *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court  stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct.

1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

Also, the *Reisinger* Court stated:

> Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir. 1999). **Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.**" ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

*Id.*(emphasis added).

## IV.    Discussion.

As an initial matter, we note that because this is a case based upon diversity jurisdiction of this Court, 28 U.S.C. § 1332, we apply Pennsylvania law.  *See Moore v. Kulicke & Soffa Industries, Inc.*, 318 F.3d 561, 563 (3d Cir. 2003).

### 1.    *Defendants Chesapeake Operating, Inc. & Chesapeake Energy Corporation's Motion to Dismiss (Doc. 10)*

Defendants Chesapeake Operating and Chesapeake Energy, in their Doc. 10  Motion

to Dismiss, argue that, since Plaintiffs' claims flow from the 2006 and 2008 Leases, "[a]ll of these claims fail as a matter of law as against Defendants Chesapeake Operating and Chesapeake Energy because these entities have no interest in the 2006 Lease or the 2008 Top Lease." (Doc. 11, p. 2). Defendants further argue that Chesapeake Operating and Chesapeake Energy did not, as Plaintiffs assert, jointly assume the interests of Eastern Resources in regards to the 2006 Lease and the 2008 Lease. As Exhibit 1 to their Doc. 10 Motion, Defendants submit the publicly recorded corporate Assignment of Eastern Resources interests, which names only Defendant Chesapeake Appalachia as Assignee. (Doc. 11, p. 6). Thus, Defendants Chesapeake Operating and Chesapeake Energy state that they did not succeed or assume the interests of East Resources and East Resources did not convey any interest in the 2006 Lease and 2008 Lease to them. Defendants Chesapeake Operating and Chesapeake Energy further point out that the publicly recorded Pooling Notice was executed and filed by Defendant Chesapeake Appalachia and not by Defendants Chesapeake Operating and Chesapeake Energy. (Id., p. 2). Defendants Chesapeake Operating and Chesapeake Energy refer to the Assignment recorded January 14, 2010, as well as the Declaration and Notice of Pooled Unit recorded September 13, 2011, submitted by the parties, to show that they are not named in Plaintiffs' Lease and that Plaintiffs have failed to state any claim against them. As indicated above, and as the parties recognize, the Court can consider these public records upon which Plaintiffs' Complaint relies, with respect to the Motions to Dismiss. See *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

Plaintiffs, in their response to the Doc. 10 Motion to Dismiss, however, argue that "[t]he absence of Chesapeake Operating, Inc. and Chesapeake Energy Corporation from the list of signatories [of the Assignment] does not preclude their acquisition or assumption of interest by contract, agency, apparent agency, corporate interrelationship, or participation." (Doc. 18, p. 2). Plaintiffs also state that, "these entities ... recorded instruments affecting the Leases ... and giving rise, at least in part, to plaintiffs' claims." (Doc. 18-3 at pp. 6-7). It is the court's task, therefore, to determine whether the Plaintiffs have alleged in their Complaint, and shown through the stated Exhibits, sufficient involvement of the moving Defendants Chesapeake Operating and Chesapeake Energy, such that they have stated a claim to survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

It is generally accepted law that the terms of a contract can only bind the parties to that contract. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 (2002). Here, the Plaintiffs do not appear to allege that moving Defendants Chesapeake Operating and Chesapeake Energy are named parties to either the 2006 Lease or the 2008 Lease. Instead, Plaintiffs allege that the three Defendants, *i.e.*, Chesapeake Operating , Chesapeake Energy and Chesapeake Appalachia, are "interrelated corporate entities," which, "assumed and acted in concert on the interests of East Resources, Inc.[,] in plaintiffs' 2006 and 2008 Leases and Addenda ... ." (Doc. 18-3, p. 6). We also acknowledge that there has been "traditional state law enforcement of contracts by (or against) nonparties through, *e.g.*, assumption." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625 (2009).

Insofar as Plaintiffs' claims are premised upon the relationship among the three Defendants as corporate entities, we find that the Motion to Dismiss of Defendants Chesapeake Operating and Chesapeake Energy should not be granted at this stage of the case. As mentioned, discovery has not yet commenced and we have stayed discovery until we resolve the pending Motions to Dismiss of Defendants. (Doc. 25). Plaintiffs freely concede that they "are not presently privy to the internal arrangements between these corporate entities." (Doc. 18-3, p. 7). We agree with Plaintiffs that they are entitled to discovery regarding the interrelationship and participation of the three Defendants named in their Complaint with respect to their claims. As Plaintiffs contend, they should be allowed to conduct discovery to determine if Defendants Chesapeake Operating and Chesapeake Energy had any interest in the 2006 Lease and 2006 Addendum, and in the 2008 Lease and 2008 Addendum. We find, therefore, that the question of agency and interrelations between the three Defendants can only be properly evaluated after appropriate discovery, and therefore, should not be subject to a motion to dismiss. *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. Appx. 803, 808 (3d Cir. 2003). Defendants Chesapeake Operating and Chesapeake Energy are not precluded from raising their issues again in a Motion for Summary Judgment after the appropriate discovery has been conducted.

Therefore, we will deny the Motion to Dismiss (Doc. 10) of Defendants Chesapeake Operating and Chesapeake Energy without prejudice to re-assert their instant arguments *via* a Rule 56 Motion for Summary Judgment after discovery is completed.

### 2. *Defendant Chesapeake Appalachia's Partial Motion to Dismiss, Doc. 7*

In its Partial Motion to Dismiss, Defendant Chesapeake Appalachia seeks the Court to dismiss Counts III, IV, V and VI of the Plaintiffs' Complaint. Specifically, Defendant Chesapeake Appalachia moves to dismiss all of Plaintiffs' non-declaratory judgment claims for failure to state a claim upon which relief can be granted.[3] Defendant Chesapeake Appalachia also moves to dismiss Plaintiffs' claims for punitive damages. Defendant Chesapeake Appalachia filed its Partial Answer to the remaining Counts of Plaintiffs' Complaint seeking declaratory judgment. (Doc. 9).

### A. <u>Count III, Specific Performance Claim</u>

Defendant Chesapeake Appalachia seeks dismissal of Plaintiffs' Count III, Specific Performance Claim, on the grounds that "Plaintiffs' claim is for an alleged breach of a contractual right of payment of money, the remedy of specific performance is precluded as a matter of law." (Doc. 8, p. 11). Defendants argue that specific performance is not a claim by itself, and that it is an equitable remedy, which should only be used when money damages would not suffice to cure an injury. (<u>Id.</u>).

We agree with Defendant Chesapeake Appalachia that "specific performance should only be granted [] where no adequate remedy at law exists." *Clark v. Pennsylvania State Police*, 496 Pa. 310 (1981). We further agree with Defendant Chesapeake Appalachia that

---

[3]Defendant Chesapeake Appalachia notes that if the separate Motion to Dismiss the Complaint in its entirety of Defendants Chesapeake Energy Corporation and Chesapeake Operating is not granted, in the alternative, Defendants Chesapeake Energy Corporation and Chesapeake Operating join in Defendant Chesapeake Appalachia's Motion to Dismiss the non-declaratory judgment claims. (Doc. 8, p. 7, n. 1).

because Plaintiffs are merely seeking the payment of the $1700 per acre provision in regards to their claim in Count III, that they do have adequate remedies available at law, *i.e.*, money damages. Specific performance is, by its nature, only an alternative to money damages in enforcing the terms of a contract. *See Clark Resources, Inc. v. Verizon Bus. Network Servs., Inc.*, 2010 WL 4973342 *4 (M.D. Pa. Dec. 1, 2010). In the case of *Clark Resources*, the District Court dismissed a Plaintiff's claim for specific performance because "specific performance is a remedy, not a freestanding legal claim." *Clark, supra*.

As Defendant Chesapeake Appalachia states, "Plaintiffs have chosen not to assert a breach of contract claim" in their Complaint. (Doc. 8, p. 11). Additionally, Defendant Chesapeake Appalachia correctly states, "[a]s Plaintiff's claim [in Count III] is for an alleged breach of a contractual right of payment of money, the remedy of specific performance is precluded as a matter of law." (Id.).

We therefore find that Plaintiffs' Count III, in which they request specific performance, should be dismissed with prejudice. The Third Circuit has held that a Plaintiff whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Based on the above discussion, we find futility in granting Plaintiffs leave to amend their claim for specific performance in Count III of their Complaint as against all three Defendants. However, we shall afford Plaintiffs leave to amend their Complaint to add a breach of contract claim.

It is well established that the court has wide discretion in allowing plaintiffs to amend their complaints, pursuant to Federal Rule of Civil Procedure 15(a). *Farmer v. Brennan*, 511 U.S. 825, 845, 114 S.Ct. 1970, 1983 (1994). Given such discretion, and in the interests of justice, we will grant Plaintiffs leave to amend their Complaint to raise a proper breach of contract claim. Under Pennsylvania law, a Plaintiff must establish three elements to make out a claim for breach of contract: (1) the existence of a contract, (2) the breach of some duty imposed by that contract, and (3) resulting damages. *Johnson v. State Farm Life Ins. Co.*, 695 F.Supp.2d 201. 212 (W.D. Pa. 2010). We find that Plaintiffs have alleged underlying facts which may be sufficient to establish a prima facie breach of contract claim under the stated elements. As such, we find that Plaintiffs should be granted leave to amend their Complaint to raise a breach of contract claim, and request money damages.

## B. *Claim IV, Misrepresentation Claim*

Further, Defendant Chesapeake Appalachia seeks to dismiss Plaintiffs' Count IV of their Complaint, claim for misrepresentation. Defendant Chesapeake Appalachia argues that the Plaintiffs' misrepresentation claim is based upon the oral representation of the unnamed land agent for East Resources, a predecessor-in-interest to Defendants under the Lease, and, as such, is barred by the parol evidence rule and the integration clause contained in the 2008 Top Lease. (Doc. 8, p. 11). As Defendant Chesapeake Appalachia states, Plaintiffs basically allege that "the land agent told [them] that the terms of the 2008 Top Lease and the 2008 Addendum would 'supersede' the 2006 Lease as of the effective date of the 2008 Lease even if the wells were drilled on the [Plaintiffs'] property." (Id., pp.

15

11-12).  Plaintiffs then allege that based on the land agent's representations, they executed the 2008 Lease and 2008 Addendum, that the land agents' representations about the payments were false, and that they relied on the statements to their detriment.

"Where prior fraudulent representations are alleged, the parol evidence rule bars such representations where the written agreement: (1) contains terms which directly deal with the subject matter of the alleged oral representation; and (2) represents the entire contract between the parties, particularly where the written agreement also contains an integration clause." *Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F.Supp.2d 474, 489 (E.D. Pa. 2009)(citations omitted).

In this case, we find it helpful to examine the application of the parol evidence rule in Pennsylvania in similar circumstances.  Pennsylvania courts have traditionally held, "[w]here parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement." *Gianni v. Russell & Co.*, 281 Pa. 320, 323 (1924).  The parol evidence rule, therefore, typically prevents the introduction of alleged oral statements which may modify or interpret the nature of the terms of the written contract.  *See Rahemtulla v. Hassam*, 539 F.Supp. 2d 755, 773 (M.D. Pa. 2008)("It has long been held that the parol evidence rule bars evidence of prior representations in a fully integrated written agreement.")(citations omitted). Accordingly, Defendant Chesapeake Appalachia  argues that the land agent's alleged oral statements to Plaintiffs regarding the 2006 Lease and 2008 Lease are not admissible, as they vary the terms of the integrated written contract.  Some courts have gone

further, holding that "[i]n Pennsylvania, it is now settled that the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution. Thus, a party may assert that provisions of a written agreement 'were committed by fraud, accident, or mistake,' but not that it was induced to enter a contract by fraudulent misrepresentation." *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 592 (E.D. Pa. 1999). "Therefore, where a party claims fraud in the inducement and the written contract is fully integrated, the parol evidence rule works to bar evidence of any representations made about any mater covered by the agreement prior to the contract's execution." *Rahemtulla v. Hassam*, 539 F.Supp. 2d at 773(citation omitted). Thus, Pennsylvania permits parol evidence only for claims involving so-called "fraud in the execution," whereby the plaintiff claims he was induced to sign a contract with certain terms, which are then fraudulently omitted from that contract. *Bardwell v. The Willis Company*, 375 Pa. 503 (1953). Indeed, if a party claims fraud in the execution, *i.e.,* "where the party proffering the evidence contends that certain terms were supposed to be included in the contract, but were omitted because of fraud, accident, or mistake, then parol evidence is admissible." *Rahemtulla v. Hassam*, 539 F.Supp. 2d at 773(citation omitted).

As the Superior Court of Pennsylvania held, "the more traditional statement of the [parol evidence] rule would apply to cases where it is alleged that the entire contract was predicated on fraud or misrepresentation." *National Bldg. Leasing, Inc. v. Byler*, 252 Pa. Super. 370, 375 (1977). The Supreme Court of Pennsylvania summarized the rule in *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 205 (2007)(citations omitted), and stated that:

[W]hile parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e.., that an opposing party made false representations that induced the complaining party to agree to the contract.

"The rationale behind this rule is 'that a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations.'" *Rahemtulla v. Hassam*, 539 F.Supp. 2d at 773(quoting *Hart v. Arnold*, 884 A.2d 315, 340 (Pa.Super. 2005)).

The elements of a claim for misrepresentation under Pennsylvania law are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 556 Pa. 489, 599 (1999). Given these elements, we find that Defendant Chesapeake Appalachia does not properly interpret Plaintiffs' misrepresentation claim in Count IV, nor does it properly apply the parol evidence rule to Plaintiffs' claim. We find that the essence of Plaintiffs' claim in Count IV is that they were induced by the misrepresentations of the land agent, to sign the 2008 Lease, and as a result, did not receive the potentially more lucrative payment terms of another energy company's lease. Plaintiffs state explicitly in their Complaint, "Plaintiffs believed the representations were true, and relied on them to execute the 2008 Lease and 2008 Addendum and to forego more lucrative opportunities to top-lease to

another leasing agent." (Doc. 1, ¶ 97, p. 14).

Defendant Chesapeake Appalachia contends that in Count IV of their Complaint, Plaintiffs claim fraud-in-the inducement and do not raise a fraud in the execution claim, since they allege that the East Resource's land agent made false oral representations to them, that induced them to execute the 2008 Lease, which were contrary to the terms of the written Lease. As such, Defendant Chesapeake Appalachia essentially maintains that "parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 437 n. 26 (2004)(citations omitted); *see also Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F.Supp.2d at 489 n. 17 (citations omitted).

We find, with respect to their misrepresentation claim in Count IV, that Plaintiffs are alleging that the entire 2008 Lease was predicated upon the misrepresentations of the land agent. Their alleged injury, therefore, flows from the fact that they were induced to sign the 2008 Lease, based upon the misrepresentation about the Defendants' activity on their land, rather than signing a more lucrative contract. Plaintiffs argue that but for the misrepresentations of the land agent, the 2008 Lease would never have come into existence. Plaintiffs are not attempting to use the alleged statements of the land agent to contest the terms of the 2008 Lease, but rather, to demonstrate why they entered this Lease in the first place, which is the proper inquiry in a claim of misrepresentation.

As such, we will apply the traditional formulation of the parol evidence rule, and

allow the presentation of parol evidence as to Plaintiffs' Count IV and the alleged fraudulent misrepresentations of the land agent. Given the Plaintiffs' argument, and the facts of the case, we are hesitant to apply the more strict approach annunciated in *Bardwell* v. *Willis*, 375 Pa. 503, 100 A2d 102 (1953). Because the land agent's alleged statements, and the Plaintiffs' subsequent misrepresentation claim, do not concern solely the terms (or lack thereof) of the 2008 Lease, we find it appropriate to allow Plaintiffs to introduce their evidence regarding Count IV, to establish the context in which this Lease was signed. As the courts have stated, "fraud to induce a person to enter into a contract is generally collateral to, *i.e.,* not interwoven with, the terms of the contract itself." *Partners Coffee Co., LLC v. Oceana Services and Products Co.*, 700 F.Supp. 2d 720 (W.D. Pa. 2010). We will not preclude Plaintiffs from asserting a potentially actionable misrepresentation claim merely because the alleged misrepresentations were made in the general context of a Lease signing.[4] Therefore, we will deny Defendant Chesapeake Appalachia's Motion to Dismiss Count IV of Plaintiffs' Complaint at this time.

**C.** ***Count V, State Law Slander of Title Claim***

Next, Defendant Chesapeake Appalachia seeks dismissal of Plaintiffs' Count V of their Complaint, state law claim for slander of title. Plaintiffs argue that Defendant engaged in the unitization of its property only to cloud Plaintiffs' title, and to attempt to extend the

---

[4]Insofar as Plaintiffs may later attempt to use the land agent's alleged statements to interpret or challenge the terms of the 2008 Lease, that issue may require its own parol evidence analysis, to be considered at the appropriate time. We will not however prevent the reliance on such statements at this time merely for allowing Plaintiffs to proceed with their claim of misrepresentation.

2006 Lease term.[5]  As Defendant Chesapeake Appalachia correctly points out, the statute of limitations in Pennsylvania for a claim of slander of title is one year from the date of publication, *i.e.,* the communication of the alleged slanderous statement by the defendant to a third person.  Pa. C.S. §5523(1); *see Sobel v. Wingard*, 366 Pa. Super. 482 (1987). Defendant states that "Plaintiffs' slander of title claim is time-barred because it is brought more than one year after the recording of the documents that Plaintiffs contend constituted a slander of their title."  (Doc. 8, p. 17).

In their  Complaint, Plaintiffs do not explicitly allege publication to a third party, as required to properly state a prima facie slander of title claim. We will follow the District Court's past reasoning however, in inferring that "the only allegedly defamatory publication ... is the Declaration of Pooling and Unitization."  *Stewart v. Swepi*, 2013 WL 170181, *8 (M.D. Pa. 2013).  We must determine, therefore, when the Declaration was published, which would be when the statute of limitations began to run.

Defendants argue, citing *Stewart*, that the material documents are either the Scrivener South Unit Declaration, which was recorded on August 19 ,2011, or the Crain Unit Declaration, which was recorded on September 13, 2006, and the Release of Oil and Gas Lease, which was recorded on November 11, 2011.  No matter which of these documents is considered, the publication date falls outside of the period of one year prior to the filing of the instant Complaint, which was November 23, 2012.  Contrarily, Plaintiffs

---

[5]We take note that in their Document 1 Complaint, in regards to their slander of title claim, Count V, Plaintiffs request relief from "Defendants EOG Resources, Inc.," which is not a party Defendant named anywhere in the Complaint.  As such, we will interpret this as an error.

argue that the Declaration did not become effective, under the terms of the 2006 Lease, until Plaintiffs received notice of the unitization, which did not occur until December 12, 2011, and thus the statute of limitations should run beginning at the time of notice in December 2011.  Alternatively, Plaintiffs also seem to argue that even if there was an earlier publication date, the December 12, 2011 notice constitutes a republication such that a new one year statute of limitation was triggered.  *Bloch v. Temple University*, 1995 WL 263541, at *3 (E.D. Pa. 1995).  We note however, that Plaintiffs do not raise this approach in their Complaint, merely in their Brief in Opposition.

Furthermore, Plaintiffs address  the so-called "discovery rule," an exception in Pennsylvania to the statute of limitations, which dictates that the statute of limitations does not begin until a plaintiff has either discovered his injury, or should have discovered it in the exercise of reasonable diligence.  *Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa. Super. 306 (1992).  In *Gallucci*, the Superior Court of Pennsylvania clarified that, "[i]t is well established that an individual asserting a cause of action is required to use due diligence to properly inform himself or herself of the facts and circumstances upon which the claimed right of recovery is based and to institute suit within the applicable statute of limitations."  *Gallucci,* 418 Pa. Super. at 311.  Plaintiffs appear to be asserting that the they are excused from the due diligence requirement on the grounds that they believed the 2006 Lease had expired, and they had executed the 2008 Lease.   It is unclear from the Plaintiffs' brief if they attempt to assert that the due diligence requirement does not apply because Plaintiffs were promised notice of any unitization by the terms of the contract, and as such, cannot be required to

have completed any additional diligence.  We note, however, as stated above, that the relevant date for a slander of title claim is the date of publication, not the date of notice, therefore the statute of limitations would have begun even before the Plaintiffs received notice of the Declaration.  *See Stewart, supra*.

Plaintiffs offer no evidence, nor case law, to support the proposition that the statute of limitations regarding their slander of title claim should commence when the Declaration became effective under the terms of the 2006 Lease, *i.e.*, when they received first notice. Alternatively, we are unpersuaded by Plaintiffs attempt to claim that "the December 12, 2011 notice directed to plaintiffs from defendant … is deemed republication."  (Doc 17, p. 19).  Pennsylvania courts have made it clear that "[i]n order for defamation to occur in the form of either libel or slander, the defamatory statement must be [] communicated *to a third person*."  *Elia v. Erie Ins. Exchange*, 430 Pa. Super. 284 (1993).  As such, notice from the defendant to the plaintiff does not satisfy the court's requirement that the slanderous statement be communicated "to a third person."  Defendants' Declaration was publicly filed in Bradford County, and thus published, at the latest, on November 11, 2011.  Plaintiffs did not file their present Complaint within a year of that date.  We find, therefore, that Defendant Chesapeake Appalachia's Motion to Dismiss Plaintiffs' claim for slander of title, Count V, should be granted, and that this claim should be dismissed with prejudice.  Since this claim is time-barred, we find futility in allowing Plaintiffs leave to amend it.

### D.  *Claim VI, Breach of Implied Duty of Good Faith and Fair Dealing Claim*

Defendant Chesapeake Appalachia also argues that Plaintiffs' Count VI, claim for

breach of implied duty of good faith and fair dealing should be dismissed.  Defendant

Chesapeake Appalachia premises this assertion on the grounds that Plaintiffs have not

asserted an independent breach of contract claim in their Complaint.  The courts have

found that "Pennsylvania law does not recognize a separate cause of action for breach of the

covenant 'because such a breach is merely a breach of contract.'"  *Stewart, supra*.   Many

courts have held that "a breach of contract action encompasses any claims asserting a breach

of the implied duty of good faith and fair dealing."  *Nova Financial Holdings Inc. v.*

*Bancinsure, Inc.*, 2012 WL 1322932, *3 (E.D. Pa. April 17, 2012)(citations omitted).  Thus,

"a breach of contract claim precludes a separate and distinct claim emanating from the duty

of good faith and fair dealing since the actions forming the basis of the claims are essentially

the same."  <u>Id.</u>(citations omitted).  Therefore, there is no independent cause of action for

breach of implied duty of good faith and fair dealing.  <u>Id.</u>(citations omitted).  As such,

Defendants argue that because Plaintiffs have not raised a claim for breach of  contract in

their Complaint, their breach of covenant claim in Count VI should be dismissed.

In response, Plaintiffs attempt to distinguish their case from *Stewart*, by arguing that

they have made out a claim for breach of the 2008 Lease.[6]  The greater issue is, however,

that Plaintiffs make out a claim for the breach of the 2008 Lease, while the breach of

covenant claim flows from the failure to give notice provision under the 2006 Lease.  Insofar

as we can tell, Plaintiffs are not claiming a breach of the 2006 Lease, only the 2008 Lease.

---

[6]As discussed above, although the breach of contract claim is not raised in Plaintiffs'
Complaint, we will give Plaintiffs leave to amend their Complaint to include such a claim,
and therefore, we recognize that they may make out such a claim in the future.

As mentioned, Pennsylvania law is clear that there is no independent cause of action for a breach of the covenant of good faith, as such a claim implicates a breach of contract. *See Nova Financial Holdings Inc. v. Bancinsure, Inc.*, 2012 WL 1322932, *3; *Zaloga v. Provident Life and Acc. Ins. Co. of America*, 671 F. Supp.2d 623 (M.D. Pa. 2009); *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa.Super. 2008). To make out a cognizable breach of covenant claim, then, Plaintiffs will have to raise a breach of contract claim with respect to the 2006 Lease. As such, we will grant Defendant Chesapeake Appalachia's Motion to Dismiss with respect to Plaintiffs' Count VI, claim for breach of implied duty of good faith and fair dealing, and we will dismiss this claim without prejudice to allow Plaintiffs to file an Amended Complaint to assert a breach of contract claim.

Under Rule 15(a), however, it is within the Court's discretion to grant or deny leave to file an amended pleading. Wright Miller & Kane, *Federal Practice & Procedure,* § 1504*; Farmer v. Brennan*, 511 U.S. 825, 845, 114 S.Ct. 1970, 1983 (1994). Furthermore, leave should be freely granted when doing so will promote the economic and speedy disposition of the whole case, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the case. *Id.* The Court is well aware Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires," however, if the amendment would be futile, it should not be permitted. *See Forman v. Davis*, 371 U.S. 178, 182 (1982). The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Further, "prejudice to the non-moving party is the touchstone" for denying leave

to file an amended complaint. *Cornell & Co., Inc. v. OSHA Review Comm'n.*, 573 F. 2d 820, 823 (3d Cir. 1978). Given these standards, we do not find futility in granting Plaintiffs leave to amend their Complaint to raise a breach of contract claim related to the 2006 Lease. If Plaintiffs fail to establish such a claim, Defendants are not precluded from raising this issue again on a later Motion for Summary Judgment.

### E. *Punitive Damages Claim*

Finally, Defendant Chesapeake Appalachia argues that Plaintiffs' claims for punitive damages for "bad faith in recording of the Scrivener South Unit Declaration and the Release of Oil and Gas Lease" and for "breach of covenant of good faith and fair dealing" should be dismissed since there is no basis for such claims. (See Doc. 1, WHEREFORE Clause at ¶'s 6 & 8). Defendant argues that since the Plaintiffs' underlying claims should be dismissed, so should the punitive damages claims. Alternatively, Defendant contends that Plaintiffs have not alleged conduct by any of the Defendants egregious enough to justify punitive damages. (Doc. 8, p. 18).

As the Court stated in *McCain v. Beverly Health and Rehab. Services, Inc.*, 2002 WL 1565526 * 2 (E.D. Pa.), "[i]n Pennsylvania, punitive damages require 'wilful or wanton conduct or reckless indifference to the rights of others.' 40 P.S. § 1301.812-A(a)." Further, the Court in *Wilson v. Chestnut Hill Healthcare*, 2002 WL 199706 * 6 (E.D. Pa.), stated as follows:

> Under Pennsylvania law, "[p]unitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *Interact Accessories, Inc. v. Video Trade Int'l, Ltd.*, No. CIV.A.98-2430, 1999 WL 159883,

at *3 (E.D. Pa. Mar. 22, 1999) (quoting *Bannar v. Miller*, 701 A.2d 232, 242 (1997)).  Punitive damages are only available in matters where "the actor knows, or has reason to know . . . of the facts which create a high degree of risk or physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to that risk," and not in matters involving simple negligence.  *Interact*, 1999 WL 159883, at *3.

An "essential fact" needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous. *Brownawell v. Bryan,* 40 Pa.D. & C.3d 604 (1985).  Outrageous conduct is an "act done with a bad motive or with reckless indifference to the interests of others."  *Focht v. Rabada*, 217 Pa.Super. 35, 38 (1970) (citing comment (b) to § 908 of the Restatement of Torts).  "Reckless indifference to the interests of others" of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."  *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 574 (1965). Simply pleading outrageous conduct does not satisfy the requirement of stating facts which, if proven, would form a basis for a jury concluding that the conduct was such that an award for punitive damages was warranted.  *Brownawell*, 40 Pa.D. & C.3d at 604.

In *Burke v. TransAm Trucking, Inc.*, 605 F. Supp. 2d 647, 651-52 (M.D. Pa. 2009), the

Court stated:

In 2005, the Pennsylvania Supreme Court observed:

The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

*Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (2005) (quotations and citations omitted). A plaintiff seeking to demonstrate that a defendant's conduct was outrageous must establish the defendant

possessed the requisite state of mind. *Hutchison,* 870 A.2d at 770-71. The defendant's action or inaction must be intentional, reckless or malicious. *Id.* at 771. The court explained:

> Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

> *Hutchison,* 870 A.2d at 772.

(Footnote omitted).

Since we will allow Plaintiffs leave to amend their Complaint to raise a breach of contract claim, we will decline to dismiss any claims for punitive damages at this time, pending review of the future Amended Complaint.

## V.    Conclusion.

As discussed above, we will deny without prejudice the Motion to Dismiss (Doc. 10) Plaintiffs' Complaint  of Defendants Chesapeake Operating and Chesapeake Energy and, allow discovery on the issues these Defendants raise in their Motion.  Further, we will grant Defendant Chesapeake Appalachia's Motion to Dismiss (Doc. 7) as to Counts III and VI of Plaintiffs' Complaint, and will dismiss with prejudice Counts III and VI as against all three Defendants.  However, we will grant Plaintiffs leave to file an Amended Complaint to raise a breach of contract claim.  We will deny Defendant Chesapeake Appalachia's Motion to Dismiss  as to Counts IV and V of Plaintiffs' Complaint.

Plaintiffs will be directed to file and serve their Amended Complaint adhering to the above findings of the Court within ten (10) days.    We will also lift the stay on discovery.

An appropriate Order will be issued.


                   **s/ Thomas M. Blewitt**
                  **THOMAS M. BLEWITT**
                  **United States Magistrate Judge**


**Dated: August 14, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH L. CRAIN and          :
KAREN J. CRAIN             :          CIVIL ACTION NO. **3:12-CV-2343**
                           :
          Plaintiffs        :
                           :
     v.                    :          (Magistrate Judge Blewitt)
                           :
CHESAPEAKE APPALACHIA L.L.C.,  :
*et al.,*                  :
                           :
          Defendants        :

## **ORDER**

**NOW, THIS 14ᵗʰ DAY OF AUGUST, 2013, BASED ON THE FOREGOING**

**MEMORANDUM, IT IS ORDERED THAT:**

1. Defendants Chesapeake Operating, Inc., and Chesapeake Energy Corp.'s Motion
to Dismiss **(Doc. 10)** Plaintiff's Complaint is **DENIED**.

2. Defendant Chesapeake Appalachia's Motion to Dismiss **(Doc. 7)** Plaintiffs'
Complaint is **GRANTED** with respect to Plaintiffs' claim for specific performance, Count III,
and this claim is **DISMISSED WITH PREJUDICE** as against all three Defendants.

3. Defendant Chesapeake Appalachia's Motion to Dismiss **(Doc. 7)** Plaintiffs'
Complaint is **DENIED** as to Count IV, Plaintiffs' claim for misrepresentation.

4. Defendant Chesapeake Appalachia's Motion to Dismiss **(Doc. 7)** Plaintiffs'
Complaint is **GRANTED** as to Count V, Plaintiffs' claim for slander of title, and this claim is
**DISMISSED WITH PREJUDICE** as against all three Defendants.

5. Defendant Chesapeake Appalachia's Motion to Dismiss **(Doc. 7)** Plaintiffs' Complaint is **GRANTED** as to Count VI, Plaintiffs' breach of an implied duty of good faith and fair dealing claim, and this claim is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiffs to file an Amended Complaint to assert a breach of contract claim.

6. Defendant Chesapeake Appalachia's Motion to Dismiss **(Doc. 7)** Plaintiffs' Complaint is **DENIED** as to Plaintiffs' claims for punitive damages.

7. Plaintiffs are granted leave to file a complete Amended Complaint to assert a breach of contract claim. Plaintiffs are directed to adhere to the above findings of the Court if they file an Amended Complaint, including the elimination of their claim for specific performance and their claim for slander of title. Plaintiffs are directed to file and serve on Defendants their Amended Complaint **within ten (10) days** of the date of this Order. Failure of Plaintiffs to file their Amended Complaint within the specified time will result in Plaintiffs proceeding on their original Complaint (Doc. 1) with respect to all Counts except for Counts III, V and VI.

8. The stay of discovery imposed by the Court is hereby **LIFTED.**


_____     **s/ Thomas M. Blewitt**
                                                  **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**


**Dated: August 14, 2013**